The next matter, number 24-1695, Marcos da Silva Borges et al. v. James R. McHenry III. At this time, would counsel for the petitioners please introduce yourself on the record to begin. Good morning, Your Honors. Attorney Annalisa Ruggio, I represent the petitioner Mr. Marcos Borges. With the Court's permission, I'd like to reserve two minutes for rebuttal. You may. Thank you. I will be arguing for four minutes, and my colleague, Attorney Stephanie Fischer Pinkert, will be arguing for four minutes. The evidentiary standard applied by the immigration judge and upheld by the Board of Immigration Appeals in this case is simply wrong. The standard should have been clear, unequivocal, and convincing, which is a different standard from the one applied, clear, and convincing. In removal proceedings, Your Honors, the Department of Homeland Security bears the burden of proving alienage, and the immigration judge must determine whether alienage was proven just by the evidence submitted by the Department. The burden rests on the government. It is not up to the individual, in this case my client, to prove that he is a citizen. The term removable, I think it's really important to describe, actually covers two different groups of individuals, those who are deportable and those who are inadmissible, and that is a very important distinction in this particular case. The Immigration and Nationality Act does not address the standard of proof for alienage. That standard comes from Whidbey v. INS. The standard of proof that an immigration judge must evaluate the evidence of alienage submitted by the Department is clear, unequivocal, and convincing, and it is so because of its importance. The clear and convincing standard applied in this case is a lower standard. Words mean something, and the standard is meant to be high because it prevents the government from deporting U.S. citizens. Additionally, it is a jurisdictional requirement for removal proceedings. Counsel? May I ask you, and if your co-counsel is arguing this point, that's fine, but I understand your point very well that it's the government's burden, and so until the government meets its burden, your client doesn't actually have to put forward any evidence. But I'm just wondering what your view is on whether your client actually contested the facts in these documents below. Do you think that there was real dispute? My client contested the reliability of those documents, Your Honor. The document that the government submitted, the EARM, the module, my client contested whether it was a reliable document. I understand very well, contested the legal reliability, saying that this is just not enough, it should have been in a different format. But as a factual matter, were any of the actual facts stated in the document contested by your client below? Was there any claim made that a particular fact was incorrect or misleading? What there was, Your Honor, was a claim as to what was not contained in the document but also what was contained. So my client, for example, contested the fact that the document seems to be a copy-and-paste approach. We don't know where the information in the document is copy-and-pasted. We do not know who prepared that document. Therefore, we do not know the reliability. So, yes, my client contested the veracity of those pieces of information because we do not know where it comes from. And shifting the burden to the individual to disprove a piece of statement on a document that as a whole is unreliable would actually be contrary to what the Immigration and Nationality Act requires, which is for the government to provide a piece of document that is reliable, that leaves no issue of doubt. That is how high the burden of the government is, how high the government must reach, and it's failed here, not necessarily because one place in the document might have had a supposed country of birth. But how can we rely on that statement of the supposed country of birth if we cannot rely on the government as a whole, on the document as a whole, Your Honor? What if we cannot tell who wrote the document, where the information in the document was from? If I may, Your Honor. Of course. Why does it matter that it says, in this case, Brazil, if we don't even know where this information came from? We don't know who reported that to the government. We don't know if it was any of the respondents in this particular case or if it was copy and pasted from somebody else's documents. We provided in the addendum to this case a document produced by the department itself that talks about the unreliability of the EARM. So the government could have chosen to produce a government-produced identity, a passport. It could have chosen to include the I-213 in this case, and it didn't. Thank you, Your Honors. Thank you. Thank you, counsel. At this time, the other counsel for the petitioner, please introduce themselves on the record to begin. Attorney Stephanie Fisher Pinkert on behalf of the petitioners. I would like to stress as an opening point, Your Honors, that if the agency got the standard of proof wrong, this court should remand to the agency to consider it under the correct standard of proof as an initial matter. With regard to the reliability of the documents, which was, yes, Your Honor, initially with me. Why would we need to remand? Let me suggest this, that where Congress has spoken in circumstances where deportability is the question, it has required in many cases only a clear and convincing standard. Here where we're talking about admissibility, admissibility at the border, why should the standard be higher? Well, Your Honor, I think it's a question of time frame. So initially would be sets the standard in all cases, deportability, excludability, whatever it's going to be, at clear, unequivocal, and convincing, recognizing the importance of not getting deported. Then Congress amends the statute, but they amend deportability, and they amend a separate section about whether you've received the charging document, and they amend deportability to clear and convincing, and whether you've received the charging document to clear, unequivocal, and convincing. So we know it's two different standards. But they don't touch inadmissibility. They don't touch alienage. Inadmissibility, alienage is a jurisdictional fact like whether you received the charging document. So because they amended other sections but did not amend the alienage and inadmissibility section, we can presume that they left the judicial interpretation intact. Why? Why would Congress do that? What would be the reasonable basis for that? I assume because it's a jurisdictional fact, Your Honor. Deportability is of somebody who has been admitted to the United States. So if I arrive with a French passport, I show you my passport. And you say, okay, we already know you're a foreign national, but have you committed a crime? We'll go with clear and convincing. But these are people who were encountered inside the United States. They're being charged as inadmissible because they're saying, we think you're a foreign national and you did not come in the right way. But they are being encountered within the United States. The Constitution applies and the jurisdictional fact of their alienage is foundational to what we're doing here in terms of having removal proceedings. So I think that's the reason. To be deportable, you're sort of already in the system. We already know you. You've presented your foreign passport. I'd like to speak a little bit more because I think it's interesting to the Court about this document. The government has relied on a lot of case law that reflects I-213s, but they didn't submit an I-213 here. And the difference between an I-213 and this document is pretty large. This Court and others have also created a list of considerations that tell us that a document is reliable when its reliability is disputed. Things like, do we know who took the statement? Did anybody sign it? Was there an interpreter? And here they're saying that there's no language listed that these folks speak, and yet there's no mention of an interpreter. There's no mention of the name of the so-called, it literally says, a border patrol agent found them. And per the field form, they said this stuff. The officer is not saying they looked at a passport. They're not saying they looked at a foreign document. They're saying they admitted this. And then they admitted this to some guy, put it on a form, and another guy read it and put it on this form. But there's a photo of the guy, right? There's a photo of the guy, sure. And so there's a photo and there's a narrative. There's a photo and there's a narrative. And the narrative is copy-pasted, Your Honor. The government presents this, and back to Judge Rickleman's question, then there's no statement like, that's not me, that's not what I said. It's an internally inconsistent document, Your Honor. Even within sentences within this document it says, the subject and child were moved so that the subject and children were over here now. Wait, how many people is it, Your Honor? This is, if I may finish my thought, this document simply doesn't meet that standard that we're talking about. It doesn't even meet the lower standard because it's internally inconsistent, and we ask the court to consider that fact. Thank you. Thank you, counsel, at this time. Counsel for the respondent, please introduce yourself on the record to begin. Good morning, Your Honors, and may it please the court, Alison Freyer for the Acting Attorney General. Petitioners do not dispute and have never disputed that they conceded their alienage and illegal presence to Border Patrol authorities on two separate occasions, once in the field and once at the Border Patrol station. Nevertheless, they seek termination of removal proceedings, arguing that the official reports submitted by DHS are not sufficient. They also challenge the agency's articulation of DHS's burden of proof. Because both these challenges are meritless, in light of their failure to dispute the truth of their concessions of alienage and illegal presence, the petition for review should be denied. Petitioners have disputed the reliability of the documents that DHS produced to meet their burden, but as Your Honors' questions have pointed out, they have never said that they didn't say those things, nor have they ever said that those things are factually incorrect. Okay, your friend says that it's your burden. We don't have to say anything. You have a document that has riddled with errors, and they would say where the paper is printed on, and that's your burden, and that's what you came forward with. We don't have to say anything. We don't have to admit we said that. We don't. And then they say the standard is a high one, and you haven't met it. So that's their argument. They would say it doesn't matter whether we admitted things or not. We don't force people to admit things. We force governments trying to do things to people to prove things, and you didn't do that. It's absolutely correct that it is DHS's burden to prove this, but they don't have to prove it using only things in DHS's custody and control. They can rely on petitioners' own statements in meeting their burden. What is that statement, counsel? Because I have to say I was a little confused from reading the briefs how exactly they conceded this point in the field. Where is that? It's in the I-213 narrative that is produced in the EARM. There's one for each petitioner. It does not include like a question-and-answer session or anything like that, so we don't know what exactly they said. We just know that they told the officer in the field and then again at the Border Patrol station that they were noncitizens unlawfully present. Is there a quote that you're referencing? Yes, it says on 186 of the record, and then there's one for each petitioner, but for the lead petitioner, the subject admitted that they had unlawfully entered the United States of America from the country of Mexico at a time and place other than as designated by immigration officers of the United States of America. That quote fits the statute. I think that what the other side is arguing is that that's stock language that appears in many of these documents, and there's no way to know, especially since we don't know who filled out this form, there's no way to know if that was actually said or it's just a cut and paste of what appears in other similar documents like this. I think that's their argument. I think so, too, and to the extent that the documents are similar to each other and to other ones, that's probably because, well, two reasons. One, I mean, charging documents usually look similar, right? Like everyone charged with a robbery has a similar indictment. That's not what the person said. Do you agree with that? I'm sorry? What you read is not what the person said. It's not a direct quote. Clearly not, right? Correct. And then what they're saying is, and there's no way to figure out what they really said because you haven't linked it up to any person who was actually involved in this proceeding, and so when you link those two things together, this isn't what they said word for word or even close to. They certainly didn't say those things, and we don't know how to figure out what they said or whether this was cut and paste, that that's a fundamental problem in your proof. But they're not really saying quite all of that because they have never said they didn't say that. They have said that's not how people talk, but they haven't said that they didn't admit alienage and unlawful presence. They've never said that. Plus, they do not have a right to remain silent. Their silence can be used against them because if they were lawfully present or they were citizens of the United States, they would speak up and say so. So their silence can be used against them. So some of the traditional concerns that we have in criminal cases about making sure that silence is not used against someone simply don't apply here. The silence can be used against them. And the DHS meets the burden, but they're allowed to rely on petitioners' own concessions of alienage and unlawful presence when they meet that burden. I would also... Council, can I just ask you just another practical question? So according to this document, we don't know if an interpreter was present. And if so, you know, what language the interpreter actually spoke. And so what are we... You know, how should we evaluate that? Because we've got information that's been provided from people who don't speak English, but there's no indication of who took the information and what language it was taken in if an interpreter was present. Well, we don't know that petitioners don't speak English. The EARM reflects petitioners' prior encounter a long time ago at the border, and he was able to affirm his address to the immigration judge in English. So we don't know that they don't speak English. But it's true the EARM does not reflect what language was used. But petitioners have never claimed there was a language barrier. They have pointed out that the form says not available, where it says language, it says not available. They have never asserted that there was a language barrier. Counsel, how are we supposed to, again, I'm just trying to understand how we evaluate that. They say it's your burden to prove these things, and until you prove them, they don't need to do anything. But your response is, well, they've never said that it's, you know, X, Y, and Z, and so those arguments don't match up, as I think you can see. So I guess my question to you is, if we're assessing the reliability of the document, let's put aside what they may say or not say, and reliability is your burden, as you've admitted, and we don't know if there is an interpreter present or what language this was conducted in, how can we conclude the document is reliable? Because government documents are presumed to be reliable and not shown otherwise. There's a presumption of regularity and a presumption of reliability. Government documents are admissible in federal court. They are reliable government documents made in the normal course of business. And so until petitioners show they are not reliable, they are. Okay, but you're scrounging now for sort of like presumptions of reliability, and they're saying the burden is almost beyond a reasonable doubt. We would not agree, but that's what they're saying. That would be clear, convincing, and unequivocal. If they're right about that, you agree that's not the position the board applied? Correct. There can be no argument that the board applied a standard. Okay, if it is clear, unequivocal, and convincing, one, do you agree that that's a different standard than clear and convincing? No, not at all. Neither does the Supreme Court. And in Patel, the BIA said it was a different standard, didn't it? It's possible, but I think this court is required to follow the Supreme Court and not the board. And are your friends wrong when they say the statute uses clear and convincing sometimes and clear and unequivocal other times? No, they're correct about that, but they're also correct that the statute is silent on alienage. Right. My question is, do these words mean different things? You say they don't, and I'm asking you. Your board says it does. The statute uses one and then uses the other, which suggests to me they mean different things. And so if I think all of that, I guess my real question is, can we overlook that wrong burden of proof under Chenery and just go with, well, they didn't respond, and there's a presumption of regularity, and if we were sitting as the board, we would say it's clear, unequivocal, and convincing. Do you think we can do that? I do. The court is not required, even under Chenery, to remand where remand would be futile. In the government's view, there's nothing equivocal about the evidence where petitioners admitted they were noncitizens unlawfully present. That's not equivocal. That's the ballgame. That's everything. And so where they admitted that and they don't dispute that they admitted that or that they are those things, or that they are, in fact, noncitizens unlawfully present, there's nothing equivocal about the evidence. So, yes, this court could go on to hold that even under a higher standard, this burden, that DHS met its burden. Can I ask you, why was the more traditional form not used here? Why was this EARM used instead? And is that happening on a regular basis? I don't know why. It does seem to be happening fairly often. The IJ mentioned that this argument comes up frequently, and I know this court heard a case just last week on this exact issue. So it does seem to be happening with some regularity. I can't speculate on how frequently. I don't know why. The encounter did happen in October of 21 during the pandemic, so it would make a lot of sense. Everything's electronic now, whether we would like it or not. And the I-213 narrative that's created here, if DHS were to create an I-213, all they do is take the information out of here and plug it into a different government form and then have that ready to go. So it's the same information in a different format. And petitioners make a big deal out of not knowing who created the form, but we do know who processed the NTA and that person's supervisor, and petitioners never sought a subpoena to talk to either one of those people. Those people probably know who created the form or they might have information, and petitioners never ask the IJ to issue a subpoena to either one of those people. IJs have subpoena powers, and it's not common, but sometimes it happens that Border Patrol officers, asylum officers, other officials earlier in the immigration pipeline will come into Immigration Court and testify about what happened, and petitioners never asked for that. And just to clarify, so you're saying the I-213, right? That's the number, right? It's exactly the same information? There's no difference? There are no additional fields to be filled in? There are probably a few additional fields, including the signature and name of the issuing officer that is not present here. So there are some differences, but petitioners have not shown that the lack of those things necessarily renders these documents so unreliable. That's a huge problem that it doesn't show who did it, because if they do want to challenge it, let's assume they did, what you would need to do is get some kind of litigation about what was said, and if you're hiding or not disclosing the name of the person who was involved, they have no way to figure that out. That really is a problem, isn't it? I don't think so. We assume that government employees are doing their job and doing it as well as they can, and when the people are called and they come into immigration... But they don't always. I know that, you know that. They don't always, no. And so don't they need the basic, what's their name, so that they can try to show if they're making a claim that that's not what happened? They have no way to do that. But they aren't really making a claim that that's not what happened. They're just saying this form wasn't good enough, but they're not saying that they didn't admit alienage and unlawful presence. Do you think this form is a failed form if they did say that's not what happened at the border? I think that would be a much different case. If they had said, we didn't say those things, or we're challenging the accuracy of those statements, even if they didn't bring forth evidence to do so, even just testimonial evidence, like a declaration. We didn't say those things. We don't know where this came from. This didn't happen like this form says it does. That's the equivocating. That's the equivocal evidence. That would not be clear. It would not be convincing. That would be an entirely different case. Here we have only DHS submitting these official government reports relating concessions that are very detrimental to petitioners' continued presence in the United States. And petitioners are just pointing out deficiencies, what they see as deficiencies in the form. If they were challenging the accuracy of the form, in that they're saying they didn't say that, or of the statement itself, I think that would be a very different case. Yes. Thank you, Counsel. Thank you, Counsel.  Counsel to the petitioner. Please reintroduce yourself on behalf of the petitioner. Yes, Your Honor. Attorney Annalisa Ruggio on behalf of the petitioner. Your Honors, it would be easier for the government to argue that the burden is on my client because there was no statement. Can I just press you on where clear, convincing, and unequivocal comes from? You say it would be. Now, would be is not about alienage, is it? Would be is not about alienage, but it is the foundation case. There's also Schneiderman. None of these are about alienage, though, correct? Right, Your Honor. So there's a Second Circuit case from this year that said that the alienage question for someone who's deportable is clear and convincing. So I guess what I'm wondering is, is that one wrong, or it cites the provision of the statute that says deportability is clear and convincing, and then it says for alienage, that's the same thing. So I'm wondering, is that just wrong, or should we be attaching the alienage question to the overall standard of review for the problem? So what the Second Circuit says is it's deportability, clear and convincing. That's for alienage, which gets to Judge Howard's question from earlier, which seems to me someone who's just encountered at the border, it's at least clear and convincing, probably not more than that. So can you respond to what at least I've represented to you, the Second Circuit says? Of course, Your Honor. I would suggest that the Court should actually look at Ward v. Holder from the Sixth Circuit, and that analysis is more thorough in the context of removal proceedings and on the question of alienage. The Second Circuit case departs from what congressional intent was. When Congress amended the Immigration and Nationality Act in 1996, it had would be. It actually addressed the standard for deportability versus inadmissibility. It could have equated those standards. It could have made one sentence that said, both in the context of deportability and inadmissibility, the standard is clear and convincing. But it chose not to do that, and it chose not to do that because it chose to keep with the judicial interpretation of clear, unequivocal, and convincing, and with the other cases such as Schneiderman, which had held the standard to be clear, unequivocal, and convincing. And the reason for that, Your Honor, is because of the consequence of deportation, of removal at this point. Your Honor, if I may briefly state, words like probably, they made this statement to a government official, three hearsays away from what's in that statement. Government officials do their jobs, true, and sometimes they do their jobs and U.S. citizens are deported. This isn't about specifically my client. This is about a protection that is afforded to any individual placed in removal proceedings. That is why the standard is that high. That is why it is so important, because even when government officials do their job to the best of their ability, they make mistakes. And this document, which is the only thing that matters, because the only thing we should be looking at is the evidence submitted by the Department, is unreliable, contains several levels of hearsay, does not contain a signature. We cannot question who produced it. And even if, as the government suggested, we questioned or subpoenaed who produced the notice to appear, that is not who prepared this document. The copy and paste means that maybe a three-year-old in this case made statements about alienage. That cannot be enough to meet either standard, unequivocal or not. It doesn't meet clear and convincing either. So, respectfully, Your Honor, I ask that the Court reverse the BIA's decision. Excuse me. Why can't you subpoena the person who prepared this document? Thank you for asking that question, Your Honor, because we don't know who it is. Why does that matter? Because in order to subpoena the person who prepared that document, Your Honor, we would have to know if they're even the proper person hoped to have drafted that document. We don't know. Can't you get an order for the government to produce the person who produced the document? Your Honor, if we could file a generic motion for the government to produce a person who prepared the document, my experience, Your Honor, in removal proceedings, is that those subpoenas are generally denied, even when we are specific as to who the individual is. So they're not denied on the basis of you not knowing who the person is? They're denied on some other basis? They're denied on the basis that the Court doesn't believe that it has the power to subpoena the individual.  Thank you, counsel.